Craig KAPLAN, Plaintiff,

v.

ASPEN KNOLLS CORP., and Robert Mazzuoccola, individually and as a principal of Aspen Knolls Corp., Defendants.

No. 02CV4235NGMDG.

United States District Court, E.D. New York.

Nov. 6, 2003.

Daniel J. Kaiser, Kaiser, Sauborn & Mair, P.C., New York, NY, for Plaintiff.

Geri S. Krauss, Herrick, Feinstein LLP., New York, NY, for Defendants.

## OPINION AND ORDER

GERSHON, District Judge.

Plaintiff, Craig Kaplan, a resident of New Jersey, commenced this action on July 26, 2002, seeking monetary damages in the amount of $509,000 against defendants Aspen Knolls Corp. and its principal, Robert Mazzuoccola, each a resident of New York. Plaintiff brings claims for breach of contract, equitable violations and violations of New York State Labor Law §§ 198 *et seq.* Plaintiff filed an Amended Complaint on October 17, 2002, in which he sought to pierce the veil of the corporate

defendant. Via stipulation dated February 25, 2003, plaintiff withdrew his equitable claims. As the parties are diverse and the amount in controversy exceeds $75,000, the court has jurisdiction over plaintiff's breach of contract claims pursuant to 28 U.S.C. § 1332(a)(1), and supplemental jurisdiction over plaintiff's state labor law claims pursuant to 28 U.S.C § 1367. Defendants move to dismiss, pursuant to Fed. R.Civ.Pro 12(b)(6), claiming that (1) plaintiff fails to state a claim of breach of contract; (2) the contract is void under the statute of frauds; (3) plaintiff fails to state a claim under Section 198 of the New York Labor Law; and (4) plaintiff fails to allege sufficient cause to pierce the corporate veil.

The Amended Complaint alleges the following:

Defendants are involved in the business of real estate development and sales. Plaintiff, from May 1998 until his departure on October 7, 2001, was employed by defendants as Chief Operating Officer of Aspen Knolls Corp. and Mr. Mazzuoccola's Chief Assistant. During plaintiff's tenure with the defendants, defendants embarked on a project to build and sell 948 homes in a development known as Aspen Knolls Estates (the "Development"). Plaintiff claims that, as an inducement to his continued employment with the defendants, he and the defendants entered into an oral contract under which plaintiff would receive $2,000 for each house sold in the Development after the sale of the 334th house. Approximately 800 houses had been sold by defendants prior to plaintiff's last day of employment. Plaintiff claims to have received $425,000 in bonuses and that he is still owed in excess of $500,000 for the 466 houses (800 houses minus the threshold 334 houses), sold by defendants during his tenure.

■ A motion to dismiss for failure to state a claim should be granted only where it "appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998). The plaintiff's factual allegations must be accepted as true, *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), and the court must draw all inferences in favor of the plaintiff. *Thomas v. City of New York*, 143 F.3d 31, 36 (2d Cir.1998). However, a complaint can be dismissed when a successful affirmative "defense appears on the face of the complaint." *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2nd Cir.2003)(*quoting Pani v.Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.1998)).

### *Failure to State a Claim—Inadequacy of Alleged Terms*

■ A claim for breach of contract must allege, at a minimum, the terms of the contract, each element of the alleged breach and the resultant damages. *Computech International, Inc. v. Compaq Computer Corp.*, 2002 WL 31398933 *2 (S.D.N.Y.2002). That is, "the complaint must plead the terms of the agreement upon which defendant's liability rests." *Posner v. Minnesota Min. & Mfg. Co.*, 713 F.Supp. 562, 563 (E.D.N.Y.1989). The key elements of a breach of contract claim are: (1) the formation of an agreement via offer, acceptance and consideration; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages. *Id.* All of these elements are alleged here.

■ In the Amended Complaint, plaintiff alleges that: (1) "in recognition of [plaintiff's] vital role, in addition to his base salary, defendants agreed to pay ad-

ditional compensation relating to the [Development];" (2) "an agreement was reached between defendants and Mr. Kaplan that he would receive $2,000.00 for each home sold at [the Development] after the sale of the 334th home while he continued to be employed by defendants;" (3) "the [Development] called for the building of 948 homes;" and (4) plaintiff continued working for defendants through October 7, 2001, at which time approximately 800 homes at the Development had been sold. Accordingly, plaintiff has alleged the formation of a contract by demonstrating an offer by defendants (continue to work for us and we will give you $2,000 per home) and acceptance and consideration by plaintiff (his continued work). Plaintiff has also properly alleged performance (his continued work for defendants), breach by defendants (their failure to pay the bonus), and damages (446 houses multiplied by $2,000.00 for each).

■ Citing *Tierney v. Capricorn Inv., L.P.,* 189 A.D.2d 629, 592 N.Y.S.2d 700 (1st Dep't.1993), defendants claim that plaintiff has not adequately alleged what consideration he provided in return for the bonus payments. In *Tierney* the court dismissed plaintiff's claims because plaintiff had an existing duty to work for the defendant which could not provide sufficient consideration upon which to base an oral contract for increased consideration. Defendants' reliance on *Tierney* is misplaced because, in *Tierney,* plaintiff was obligated to work for the defendant pursuant to a written three year employment agreement. Here, plaintiff was an employee at-will. Performance rendered by an at-will employee, before any notice of revocation, creates a unilateral contract binding the employer to pay the specified wage and to perform all other promises that he may have made in the agreement. 1 Joseph M. Perillo, *Corbin on Contracts,* § 4.2, at 566

n. 44 (rev'd ed.1995). Thus, the continued service by an employee is sufficient consideration to support an employer's promise to pay an at-will employee a bonus. *Levy v. Lucent Technologies Inc.,* 2003 WL 118500, at *9–10 (S.D.N.Y.2003)(*citing* 2 Joseph M. Perillo & Helen H. Bender, *Corbin on Contracts* § 6.2, at 213–17 (rev'd ed.1995)). Accordingly, plaintiff's continued performance following the alleged oral promise provides sufficient consideration to obligate defendants to pay plaintiff the promised bonus.

■ Defendants also argue that the oral contract is too vague because plaintiff has failed to allege: (1) who bound defendants to the oral contract; (2) when the agreement was entered into; (3) when the $2,000 bonus per home was to be paid to him; and (4) whether the bonus was to be paid after each home sale, at the end of the month, at the end of the year or at the end of the project. These arguments do not warrant dismissal, as it is not necessary for each detail of a contract to be pleaded individually, so long as plaintiff has submitted "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In any event, it is easily inferrable from the amended complaint that defendant Mazzuoccolla is alleged to have entered into the agreement with plaintiff and that the bonus program would begin upon the sale of the 335th home in the Development.

### Statute of Frauds

■ Defendants raise the statute of frauds as a bar to the enforcement of the alleged oral contract, because, according to defendants, the oral contract could not be performed within one year. New York's statute of frauds provides, *inter alia,* that:

> "Every agreement, promise or undertaking is void, unless it or some note or

memoranda thereof be in writing, and subscribed by the party to be charged therewith, if such agreement, promise or undertaking: By its terms is not to be performed within one year from the making thereof..." N.Y. Gen. Oblig. Law § 5–701(a)(1).

Defendants claim that the alleged oral agreement, on its face, cannot be performed within a year because plaintiff has asserted claims seeking payment for both those homes sold during and after his tenure with the defendants. Defendants claim that these allegations negate plaintiff's efforts to tie the alleged bonus to his at-will employment, which by its terms, is performable within one year. In essence, defendants are asserting that plaintiff has made impermissibly inconsistent claims.

To begin with, plaintiff withdrew his equitable claims for recovery of payments for houses sold after he left his employment at the conference of January 2, 2003, did so again expressly in the February 25, 2003 stipulation, and reiterated this withdrawal in his opposition papers. That is sufficient to dispose of this argument. In any event, while a complaint may not allege inconsistent facts, *e.g.*, whether or not there was an agreement, because allegations of fact are binding judicial admissions, *see Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528–29 (2d Cir.1985), here, plaintiff, even if he had not withdrawn his equitable claims, did not claim inconsistent facts; rather, he was making only alternative legal claims, namely, that the agreement amounted to a "contract" and that he was also entitled to be paid for those houses that were sold after he departed under theories of equity. It is axiomatic that a complaint may plead in the alternative. Fed.R.Civ.P. 8(e)(2). Indeed, legal theories may be pled in the alternative even if the alternatives are contradictory. *See,*

*e.g., Aiken v. Nixon,* 236 F.Supp.2d 211, 223 (N.D.N.Y.2002).

Finally, defendants argue that, because the Amended Complaint states only that plaintiff would not receive any bonus money prior to the sale of the 334th home and provides "no basis to conclude ... that this could have occurred within a year," plaintiff's claim is barred by the statute of frauds. *See Failla v. Mandell,* 200 N.Y.S.2d 652 (N.Y.Sup.1960)(time period between when a contract is entered into and when performance is scheduled to begin counts for purposes of determining whether a contract may be performed within a year). While defendants are correct that plaintiff does not allege when the oral contract began, or whether 334 houses could have been built within one year, it is reasonably inferable from the Amended Complaint that that number of houses could have been built within one year. Certainly, nothing in the Amended Complaint forecloses that possibility.

### New York State Labor Law Claim

■ Plaintiff also brings a claim pursuant to Section 198 of the N.Y. Labor Law which provides in relevant part: "(1–a) In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee reasonable attorney's fees ..." However, relief pursuant to Section 198 is available only in actions for wages based upon the substantive provisions of Article 6 of New York's Labor Law. *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d, 457, 464, 605 N.Y.S.2d 213, 626 N.E.2d 29 (1993). Here, as in *Gottlieb*, plaintiff did not assert a violation of any of the substantive provisions of Article 6 of the Labor Law, but only a common-law contract claim and a second claim for a violation of Labor Law Section 198. *Id.* at 460, 605 N.Y.S.2d 213, 626 N.E.2d 29. Accordingly, plaintiff's labor law claim must be dismissed.

Even if plaintiff had asserted a claim under Article 6, it would be dismissed for a separate reason, namely, that employees serving in an executive capacity are excluded from the protection of Labor Law Article 6. Therefore, such executive employees may not recover under Article 6. *See Gottlieb,* 82 N.Y.2d at 464, 605 N.Y.S.2d 213, 626 N.E.2d 29; *Sorrentino v. Bohbot Entertainment & Media Inc.,* 265 A.D.2d 245, 246, 697 N.Y.S.2d 263 (1st Dep't 1999); *Taylor v. Blaylock & Partners,* L.P., 240 A.D.2d 289, 292, 659 N.Y.S.2d 257 (1st Dep't 1997). Here, plaintiff clearly states that his position with the defendants was that of Chief Operating Officer, and a chief operating officer is an executive position. *See Sorrentino,* at 265. Plaintiff's argument that the sums owed by defendants were "vested and therefore fall within the definition of wages" only confuses the point, namely, that executive employees are not entitled to relief under Labor Law Section 198.

### Piercing the Corporate Veil

██ Plaintiff seeks to pierce the corporate veil of the corporate defendant and impose personal liability on defendant Mazzuoccola. To assert a claim for individual liability under an alter ego theory, a plaintiff must demonstrate that: (1) that the person exercised such complete dominion and control "in respect to the transaction attacked" that the corporation had "at one time" no separate will of its own; and (2) that this domination was used to "commit fraud or wrong" against the plaintiff, which proximately caused the plaintiff's injury. *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.1988), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). Additionally, even under the liberal pleading standards of Federal Rules of Civil Procedure 8(e), a plaintiff must plead facts sufficient to show that these elements are satisfied. *Alter v. Bo-*

*goricin,* 1997 WL 691332 *5 (S.D.N.Y. 1997) (liberal pleading requirements not met where plaintiff did not allege facts sufficient to demonstrate that defendants misused the corporation for [defendants'] personal ends so as to commit a wrong or injustice against him).

██ Plaintiff's claim must be dismissed because he fails to allege that defendant Mazzuoccola used his control of the Aspen Knolls Corp. to plaintiff's detriment. Plaintiff has claimed that Mazzuoccola used personal checks to pay plaintiff, that the assets of the corporate and individual defendants were "routinely intermingled," and that the corporate form was ignored. Even assuming these claims establish Mazzuoccola was using the corporate defendant as an alter ego, these allegations do not establish that Mazzuoccola's use of the corporate defendant harmed plaintiff. *See Alter* at *4–5 (allegations that an individual ignored corporate formalities, diverted corporate assets and commingled personal funds unrelated to alleged violation of employment agreement). Simply put, plaintiff has not alleged that the breach of contract furthered Mazzuoccola's personal interests rather than those of the Aspen Knolls Corp., or that the breach was related to any misuse of the corporate form. *Id.*

### Conclusion

For the foregoing reasons defendants' motion to dismiss is granted in part and denied in part. Defendants' motion to dismiss is denied as to plaintiff's breach of contract claim and granted as to plaintiff's claims seeking to pierce the corporate veil and those made under N.Y. Labor Law § 198.

**SO ORDERED.**